SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
OXNARD MANOR, LP dba OXNARD MANOR HEALTHCARE CENTER, a California Skilled Nursing Facility; BERTIE KRIEGER, an individual; SHLOMO RECHNITZ, an individual; OXNARD HEALTHCARE & WELLNESS CENTRE, LP, a California Limited Partnership

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
ANNA SIGALA deceased, by and through her personal legal representative and successor in interest, ANTHONY SIGALA; ANTHONY SIGALA Individually

**FILED**
**DEC 29 2021**
BRENDA L. McCORMICK
Executive Officer and Clerk
By _____, Deputy
IVONNE PEACOCK

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* | **CASE NUMBER:** *(Número del Caso):* 56-2021-00561668-CU-PO-VTA |
| Ventura Courthouse<br>800 South Victoria Avenue<br>Ventura, CA 93009 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Christian R. Oliver, Esq, The Barnes Firm, LO, 655 W. Broadway, Ste.840, San Diego, CA 92101, (800)800-0000

| | | |
|---|---|---|
| DATE: *(Fecha)* DEC 29 2021 | BRENDA L. McCORMICK Clerk, by *(Secretario)* IVONNE PEACOCK | , Deputy *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☒ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.      [Print this form]   [Save this form]   [Clear this form]

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, ____ number, and address):
ALUBLA_OGHASSABIAN, BBN 202683
CHRISTIAN R. OLIVER, BBN 315192
THE BARNES FIRM, LC
866 W. BROADWAY, SUITE 840, SAN DIEGO, CA 92101

TELEPHONE NO. (800)800-0000        FAX NO. (Optional):
ATTORNEY FOR (Name): ANNA SIGALA, deceased, by and through her personalized representation and
successor in interest, ANTHONY SIGALA; and ANTHONY SIGALA, individually

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA
STREET ADDRESS: 800 South Victoria Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Ventura, CA 93009
BRANCH NAME: Ventura Courthouse

CASE NAME: ANNA SIGALA, deceased, et al. vs. OXNARD MANOR, LP, et al.

FOR COURT USE ONLY

VENTURA
SUPERIOR COURT
FILED

DEC 29 2021

BRENDA L. McCORMICK
Executive Officer and Clerk
By:_____, Deputy

IVONNE PEACOCK

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) / [ ] Limited (Amount demanded is $25,000) | [ ] Counter   [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 56-2021-00561668-CU-PO-VTA   JUDGE   DEPT. |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[X] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify): Four
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: December 29, 2021
Christian R. Oliver, Esq.
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF VENTURA

800 South Victoria Avenue
Ventura , CA 93009
(805) 289-8525
WWW.VENTURA.COURTS.CA.GOV

### NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

Case Number: 56-2021-00561688-CU-PO-VTA

Your case has been assigned for all purposes to the judicial officer indicated below.

A copy of this Notice of Case Assignment and Mandatory Appearance shall be served by the filing party on all named Defendants/Respondents with the Complaint or Petition, and with any Cross-Complaint or Complaint in Intervention that names a new party to the underlying action.

| ASSIGNED JUDICIAL OFFICER | COURT LOCATION | DEPT/ROOM |
|---|---|---|
| Hon. Ronda McKaig | Ventura | 41 |
| HEARING | | |

| EVENT DATE | EVENT TIME | EVENT DEPT/ROOM |
|---|---|---|
| | | |

## SCHEDULING INFORMATION

**Judicial Scheduling Information**

APPEARANCE AT THE ABOVE HEARING IS MANDATORY.
Each party must file a Case Management Statement no later than 15 calendar days prior to the hearing and serve it on all parties. If your Case Management Statement is untimely, it may NOT be considered by the court (CRC 3.725).
If proof of service and/or request for entry of default have not been filed: At the above hearing you are ordered to show cause why you should not be compelled to pay sanctions and/or why your case should not be dismissed (CCP 177.5, Local Rule 3.17).

**Advance Jury Fee Requirement**

At least one party demanding a jury trial on each side of a civil case must pay a non-refundable jury fee of $150. The non-refundable jury fee must be paid timely pursuant to Code of Civil Procedure section 631.

**Noticed Motions/Ex Parte Matters**

To set an ex parte hearing, contact the judicial secretary in the assigned department. Contact the clerk's office to reserve a date for a law and motion matter.

**Telephonic Appearance**

Telephonic appearance at the Case Management Conference is permitted pursuant to CRC 3.670. In addition, see Local Rule 7.01 regarding notice to the teleconference provider. The court, through the teleconference provider, will contact all parties and counsel prior to the hearing.

Date: 12/30/2021

Clerk of the Court,
By: _____
Ivonne Peacock, Clerk

VEN-FNR082

NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED

DEC 29 2021

BRENDA L. McCORMICK
Executive Officer and Clerk
By_____, Deputy

IVONNE PEACOCK

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):** OXNARD MANOR, LP dba OXNARD MANOR HEALTHCARE CENTER, a California Skilled Nursing Facility; BERTIE KREEGER, an Individual; SHLOMO RECHNITZ, an Individual; OXNARD HEALTHCARE & WELLNESS CENTRE, LP, a California Limited Partnership

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** ANNA SIGALA, deceased, by and through her personal legal representative and successor in interest, ANTHONY SIGALA; ANTHONY SIGALA individually

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 o más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es): Ventura Courthouse<br>800 South Victoria Avenue<br>Ventura, CA 93009 | CASE NUMBER: (Número del Caso):<br>56-2021-00561858-CU-PO-VTA |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: (El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Christian R. Oliver, Esq, The Barnes Firm, LO, 655 W. Broadway, Ste.940, San Diego, CA 92101, (800)800-0000

| | | | |
|---|---|---|---|
| DATE:<br>(Fecha) DEC 29 2021 | BRENDA L. McCORMICK Clerk, by<br>(Secretario) | IVONNE PEACOCK | , Deputy<br>(Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☐ on behalf of (specify):
   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

## SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form. [Print this form] [Save this form] [Clear this form]

1  ALLEN R. OGHASSABIAN, SBN 292653
   CHRISTIAN R. OLIVER, SBN 313192
2  THE BARNES FIRM, LC
   655 W. Broadway, Ste 940
3  San Diego, California 92101
   Tel: 800.800.0000 Fax: 888.800-7050
4  Email: allen.oghassabian@thebarnesfirm.com
   Email: christian.oliver@thebarnesfirm.com
5

6  Attorneys for Plaintiffs

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF VENTURA

10  ANNA SIGALA, deceased, by and through her    Case No. 56-2021-00561668-CU-PO-VTA
    personal legal representative and successor in
11  interest, ANTHONY SIGALA; ANTHONY SIGALA,     COMPLAINT FOR DAMAGES:
    individually
12                                                 1. Elder Abuse and Neglect
    Plaintiffs,                                       (Welf. & Inst. Code, §15600,
13  v.                                                 et seq.)
14  OXNARD MANOR, LP dba OXNARD MANOR              2. Violation of Patient Rights
    HEALTHCARE CENTER, a California Skilled           (Health & Safety Code
15  Nursing Facility; BERTIE KRIEGER, an individual;   §1430(b))
    SHLOMO RECHNITZ, an individual; OXNARD       3. Negligence
16  HEALTHCARE & WELNESS CENTRE, LP; a
    California Limited Partnership                 4. Wrongful Death
17
18  and Does 1-25 inclusive.
         Defendants,
19

20

21        All allegations set forth in this Complaint are based on information and belief

22  except those allegations which pertain to Plaintiffs herein and their counsel.  Each

23  allegation in this Complaint either has evidentiary support or is likely to have evidentiary

24  support after reasonable opportunity for further investigation and discovery.

25  ///

26                              **THE PARTIES**

27        1.    Plaintiff Decedent ANNA SIGALA ("Decedent SIGALA") was born on

28  July 09, 1933 and died on January 03, 2021.

                                    1
                                COMPLAINT

VENTURA
SUPERIOR COURT
FILED

DEC 2 9 2021

BRENDA L. McCORMICK
Executive Officer and Clerk
By_____, Deputy
IVONNE PEACOCK

2.      Decedent SIGALA was a victim of elder abuse and at all times relevant herein, an "elder" or "dependent adult" as defined by Welfare & Institutions Code § 15610.23(b), and had physical limitations restricting her ability to carry out normal activities and protect her rights as discussed more fully *infra*.

3.      At all times relevant to this action herein, Decedent SIGALA was a resident of the State of California and County of Ventura.

4.      Plaintiff  ANTHONY SIGALA ("ANTHONY") is an adult individual, the natural son of Decedent SIGALA, and he brings the survival claims of Elder Abuse and Neglect and Violation of Patient Rights on behalf of Decedent SIGALA, in his capacity as her personal legal representative and Successor in Interest.

5.      ANTHONY is the natural son of Decedent SIGALA. He brings the Wrongful Death action in his individual capacity as Decedent SIGALA'S heir.

6.      At all times relevant to this action herein, ANTHONY was a resident of the State of California and County of Ventura.

7.      At all times relevant to this action herein, the Skilled Nursing Facility ("SNF") known as OXNARD MANOR, LP dba OXNARD MANOR HEALTHCARE CENTER ("Defendant FACILITY") was located at 1400 W. Gonzales Rd., Oxnard, CA 93030.

8.      Plaintiffs are informed and believe, and based upon information and belief allege, that Defendant OXNARD MANOR, LP, Defendant, OXNARD MANOR HEALTHCARE CENTER, Defendant, BERTIE KRIEGER, Defendant, SHLOMO RECHNITZ AND OXNARD HEALTHCARE & WELLNESS CENTRE, LP were doing business as ("dba") Defendant FACILITY.

9.      Plaintiffs are informed and believe, and based upon information and belief allege, that at all times relevant herein, Defendant, OXNARD MANOR, LP, Defendant, OXNARD MANOR HEALTHCARE OF CENTER, Defendant, BERTIE KRIEGER, Defendant SHLOMO RECHNITZ  and OXNARD HEALTHCARE & WELLNESS CENTRE, LP owned the Defendant FACILITY.

10.     Plaintiffs are informed and believe, and based upon information and

2

**COMPLAINT**

1  belief allege, that at all times relevant herein, Defendants operated the Defendant FACILITY.

2      11.     Plaintiffs are informed and believe, and based upon information and

3  belief allege, that at all times relevant herein, Defendant OXNARD MANOR, LP dba

4  OXNARD MANOR HEALTHCARE CENTER, (hereinafter OXNARD MANOR "(THE

5  LICENSEE)" was the Licensee for the Defendant FACILITY.

6      12.     Plaintiffs are informed and believe, and based upon information and

7  belief allege, that Defendant OXNARD MANOR, LP dba OXNARD MANOR HEALTHCARE

8  CENTER (THE LICENSEE), was at all times relevant herein, a California registered

9  domestic company.

10     13.     On December Plaintiffs are informed and believe, and based upon

11  information and belief allege, that Defendant OXNARD MANOR, LP dba OXNARD MANOR

12  HEALTHCARE CENTER (THE LICENSEE'S) principal executive office is located at 3580

13  Wilshire Blvd. 6th floor, Los Angeles, CA, 90010.

14     14.     On December 29, 2021, Plaintiff's served a Notice of Intent to

15  Commence Action Against Healthcare Provider pursuant to Code of Civil Procedure section

16  364 on all Defendants.

17              **JURISDICTION AND VENUE**

18     15.     This Court has jurisdiction over the causes of action asserted

19  pursuant to California Code of Civil Procedure § 410.10.

20     16.     The acts alleged in this complaint occurred in the County of Ventura.

21     17.     The Defendants, and each of them, have sufficient minimum

22  contacts in California based on conducting business in California or otherwise

23  intentionally avail themselves of the California market though their provision of services

24  in the County of Ventura, so as to render them essentially at home in California and

25  making the exercise of jurisdiction by the California courts consistent with traditional

26  notions of fair play and substantial justice.

27     18.     Venue is proper in this Court pursuant to California Code of Civil

28  Procedure §§ 395 and 395.5 based on the facts, without limitation, that this Court is a

3

**COMPLAINT**

1   court of competent jurisdiction, that at least one Defendant either resides or does

2   business in the County of Ventura, and because the injuries to the persons complained

3   of herein occurred in the County of Ventura.

4

5   ## BACKGROUND ALLEGATIONS

6       19.     Plaintiffs are informed and believe, and based upon information

7   and belief allege, that a licensee is responsible for compliance with licensing

8   requirements and the organization, management, operation, and control of the facility.

9   The general duties of a licensee are set forth in Title 22 of the California Code of

10  Regulations, § 72501. Certain duties are non-delegable including the responsibility for

11  compliance with regulations and the management and control of the SNF. Delegation

12  of authority by a licensee shall not diminish the responsibilities of the licensee.

13  Therefore, even where a licensee delegates operational control to another person or

14  entity, that licensee remains directly liable for management, operation, and control of

15  the facility. (Cal. Code Regs., tit. 22, § 72501(a).)

16      20.     Plaintiffs are informed and believe, and based upon information

17  and belief allege, that Defendants dba the Defendant FACILITY were subject to the

18  requirements of federal and state laws and regulations that govern the operation of a

19  SNF in California. In connection with its operation of the Defendant FACILITY,

20  Defendants had a substantial and ongoing caretaking and custodial relationship

21  involving ongoing responsibility for the basic needs of its residents, including Decedent

22  SHIRELY.

23      21.     Plaintiffs are informed and believe, and based upon information

24  and belief allege, by law, Defendant OXNARD MANOR, LP dba OXNARD MANOR

25  HEALTHCARE CENTER (THE LICENSEE) a SNFs operating in California must

26  delegate to a designated administrator, in writing, the authority to organize and carry

27  out the day-to-day functions of the SNF.  During Decedent SHIRLEY'S admission to

28  the Defendant FACILITY, the Defendant FACILITY had an Administrator who was

4

1  responsible for the administration and management of the SNF in accordance with Title
2  22 of the California Code of Regulations § 72513. The Administrator was a managing
3  agent of Defendant OXNARD MANOR, LP dba OXNARD MANOR HEALTHCARE
4  CENTER (THE LICENSEE) and had care or custody of Decedent SIGALA.

5          22.     Plaintiffs are informed and believe, and based upon information
6  and belief allege, Defendants, and each of them, had the duty to employ an adequate
7  number of qualified personnel to carry out all of the functions of the SNF. (Health &
8  Safety Code § 1599.1(a); Cal. Code Regs., tit. 22, § 72501, subd. (e)) Adequate
9  staffing is essential to proper patient care and outcomes. There is no greater predictor
10 of patient outcome in a skilled nursing facility than understaffing. The standard of care
11 codified at 42 U.S.C. §§ 482.30 and 483.25 is to provide sufficient qualified nursing
12 staff for nursing and related services to attain or maintain the highest practicable
13 physical, mental, and psychosocial well-being of each resident, as determined by
14 resident assessments, and plans of care. Because these requirements are codified in
15 state and federal regulations, everyone involved in nursing home operations, including
16 the owners, operators, managers, administrators, and directors of nursing in this case,
17 understands the direct relationship between quality staff and patient outcomes.

18         23.     Plaintiffs are informed and believe, and based upon information
19 and belief allege, in addition to Defendants' duty to have sufficient numbers of well-
20 qualified and trained staff, Defendants had a duty to ensure that the Defendant
21 FACILITY was operated in a way that respected and did not violate well-recognized
22 resident rights under California Code of Regulations, title 22; Health and Safety Code
23 section 1599.1; 42 U.S.C. §§ 1395-1396; and 42 Code of Federal Regulations part
24 483.

25         24.     Plaintiffs are informed and believe, and based upon information
26 and belief allege, the Defendant FACILITY and OXNARD MANOR HEALTHCARE
27 CENTER and Defendant, OXNARD HEALTHCARE & WELLNESS CENTRE, LP were
28 under common ownership and control.

25.  Plaintiffs are informed and believe, and based upon information and belief allege, Defendant OXNARD MANOR, LP, Defendant, OXNARD MANOR HEALTHCARE CENTER (THE LICENSEE), Defendant, BERTIE KRIEGER, Defendant, SHLOMO RECHNITZ and Defendant OXNARD HEALTHCARE & WELLNESS CENTRE, LP were responsible for ensuring the Defendant FACILITY was operated in full compliance with federal and state laws and regulations governing operations of a SNF, and for all aspects of the organization, management, operation, and control of the Defendant FACILITY.

26.  Plaintiffs are informed and believe, and based upon information and belief allege, Decedent SIGALA'S injuries arose out of the organization, management, operation and control of the Defendant FACILITY by Defendant OXNARD MANOR, LP, Defendant, OXNARD MANOR HEALTHCARE CENTER, (THE LICENSEE), Defendant BERTIE KRIEGER, Defendant, SHLOMO RECHNITZ and Defendant, OXNARD HEALTHCARE & WELLNESS CENTRE, LP in their capacity as owner/operator of the Defendant FACILITY.

27.  Plaintiffs are informed and believe, and based upon information and belief allege, Defendants, each of them, share a joint responsibility for Decedent SIGALA'S  injuries and death.

28.  Plaintiffs are informed and believe, and based upon information and belief allege, that at all times relevant herein, Defendants managed and controlled the Defendant FACILITY and made critical decisions regarding staffing budget and census, resulting in nurse staffing which fell below the legal minimum.  Defendant OXNARD MANOR, LP, Defendant, OXNARD MANOR HEALTHCARE CENTER (THE LICENSEE) Defendant, BERTIE KRIEGER, Defendant, SHLOMO RECHNITZ, Defendant, OXNARD HEALTHCARE & WELLNESS CENTRE, LP benefited financially from the policies and procedures, decisions, control, and management of the Defendant FACILITY in the form of income and profits received from the Defendant FACILITY.

6

**COMPLAINT**

29.     Plaintiffs are informed and believe, and based upon information and belief allege, that if Defendant OXNARD MANOR, LP, Defendant, OXNARD MANOR HEALTHCARE CENTER (THE LICENSEE), Defendant BERTIE KRIEGER, Defendant, SHLOMO RECHNITZ and Defendant OXNARD HEALTHCARE & WELLNESS CENTRE, LP are not treated as a single enterprise or alter-egos of each other, a severe injustice will result. Allowing Defendant  OXNARD MANOR, LP, Defendant, OXNARD MANOR HEALTHCARE CENTER,(LICENSEE), Defendant, BERTIE KRIEGER, Defendant, SHLOMO RECHNITZ, Defendant, OXNARD HEALTHCARE & WELLNESS CENTRE, LP to avoid legal responsibility for actions taken at the Defendant FACILITY level, which they directed and caused, would be unfair and unjust.

30.     Plaintiffs are informed and believe, and based upon information and belief allege, Defendants engaged in elder abuse and other wrongful conduct against Decedent SIGALA.

31.     The true names and capacities, whether individual, corporate partnership, associate, or otherwise of Defendants named herein as DOES 1-25, inclusive, are unknown to Plaintiff, who therefore sue those Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and/or capacities and/or involvement of said fictitiously named Defendants when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to and thereby legally caused the injuries and damages herein alleged.

32.     On information and belief, DOES 1 through 10 at all times mentioned herein owned, operated, managed, supervised, controlled, maintained, or were otherwise responsible for the business activities of Defendant FACILITY. Such DOES would include officers, directors, controlling shareholders, partners, and/or governing board members, persons in *de facto* control of healthcare, operators, and/or

7

**COMPLAINT**

1  employees of Defendant FACILITY.   At all times relevant to this action, DOES 1
2  through 10 helped set and enforce policies and procedures for the services rendered
3  to clients of Defendant FACILITY.

4         33.    On information and belief, DOES 11 through 15 may be staff or
5  contracted personnel of Defendant FACILITY, including physicians, licensed nurses,
6  aides, social workers, business office personnel, and/or other clinical, or
7  administrative personnel including, without limitation, persons directly or indirectly
8  responsible for provision of patient care, persons having made representations or
9  warranties to Plaintiffs, and/or persons acting in concert with other Defendants.

10        34.    On information and belief, DOES 16 through 25 include persons
11  directly or indirectly responsible for provision of care to Decedent SIGALA, including
12  but not limited to physicians, medical groups, managed care organizations, acute care
13  hospitals, home health agencies, visiting nurses, therapists, and/or other ancillary care
14  providers who saw, examined, evaluated, observed and/or treated or failed to treat
15  Decedent SIGALA leading to injury or death and/or persons having made
16  representations or warranties to or from the Department of Social Services, the
17  Department of Public Health, the Long Term Care Ombudsman, Adult Protective
18  Services, Defendant FACILITY, and/or anyone purporting to act on behalf of or in
19  concert with these persons or entities. The identities of such persons or entities are
20  unknown to Plaintiff and Plaintiff will seek leave to amend when those identities are
21  ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the
22  Defendants designated as a DOE is responsible in some manner for the events and
23  happenings herein referred to and thereby legally caused the injuries and damages
24  herein alleged.

25        35.    Upon information and belief, Plaintiff further alleges that each
26  Defendant and DOES 1-25 were the agent, servant, employee, joint venturer, and/or
27  partner of each Co-Defendant, and at all times acted within the course and scope of
28  said agency, employment, venture, and/or partnership pursuant to the policies,

**COMPLAINT**

1   practices, procedures, written or otherwise, and with the advance knowledge,

2   acquiescence, or subsequent ratification of each Co-Defendant.

3        36.    Upon information and belief, Plaintiff further alleges that each

4   Defendant and DOES 1-25 are liable for the acts of each other through principals

5   and/or respondent superior, agency, ostensible agency, partnership, alter-ego and/or

6   other form(s) of vicarious liability. Consequently, each Defendant is jointly and severally

7   liable to Plaintiffs for damages sustained as a proximate result of his, her, or their

8   conduct.

9        37.    Decedent SIGALA had a history of Alzheimer's Disease.   As a

10   result if her physical and mental condition,   she was dependent on others for her

11   activities of daily living including, but not limited to, personal hygiene, continence care,

12   transferring in and out of bed, eating, drinking, and managing her medication.

13        38.    Defendants failed to properly assess and gather information to

14   make decisions about suitable interventions to avoid individualized health risks. The

15   care plan must set goals to provide benchmarks for evaluating whether the planned

16   care interventions are effective. The staff must assess and reassess the resident to

17   determine whether the care plan goals are being met.   If the interventions are not

18   working, the care plan must be modified to include alternative treatment interventions.

19   If the resident has a change of condition, he or she must be reassessed to determine

20   if the care plan needs to be modified as a result of the resident's new condition and/or

21   baseline. Care planning is an ongoing interdisciplinary process that is critical to patient

22   outcomes.

23        39.    Defendants knew, or should have known, that prevention and care

24   is especially important among nursing home residents such as Decedent SIGALA, who

25   are more susceptible to respiratory infection/syndrome due to their age and medical

26   conditions.

27        40.    However, Defendant FACILITY failed to provide adequate care to

28   Decedent SIGALA and failed to effectively develop, implement, and modify care plans

9

**COMPLAINT**

1  for her individualized care needs

2      41.    During Decedent SIGALA'S stay at Defendant FACILITY, her son,

3  ANTHONY, checked in on her periodically.

4      42.    Sometime during the early spring of 2020, Defendant FACILITY

5  no longer allowed visitors in the facility.

6      43.    However, Defendant FACILITY failed to provide adequate care to

7  Decedent SIGALA and failed to effectively develop, implement, and modify care plans

8  for her individualized care needs.

9      44.    Decedent, SIGALA, tested positive for COVID-19.    Decedent

10 SIGALA was placed in the designated (COVID-19 unit) decedent SIGALA was found

11 to be slowly deteriorating. Over the next few days, Decedent SIGALA'S health

12 continued to decline.

13     45.    Unsurprisingly, Decedent SIGALA'S health continued to

14 deteriorate.    Decedent, SIGALA could not recover from her extreme respiratory

15 infection/ syndrome and other injuries and died on January 3, 2021.

16                      **FIRST CAUSE OF ACTION**

17                      **ELDER ABUSE AND NEGLECT**

18              **[Welfare & Institution Code §§ 15600, et seq.]**

19       **(Against All Defendants) OXNARD MANOR, LP et. al. and Does 1-25)**

20     46.    Plaintiffs hereby incorporates by reference Paragraph 1 through

21 45 of this Complaint as though fully set forth herein.

22     47.    Decedent SIGALA at all times relevant herein, was over the age

23 of 65 and thus an "elder" as that term is defined in Welfare and Institutions Code §

24 15610.27.

25     48.    Decedent SIGALA was not able-bodied and was unable to take

26 care of her own needs during the time she was under the care and custody of

27 Defendants, while a resident of Defendant FACILITY. Decedent SIGALA had a history

28 of Alzheimer's Disease and difficulty walking. She was, thus, dependent on

1  Defendants' care staff for all her activities of daily living including assistance in
2  dressing, grooming, bathing, toileting, medication management, and feeding.

3      49.    Decedent, SIGALA was not able-bodied and was unable to take
4  care of her own needs during the time she was under the care and custody of
5  Defendants, while a resident of Defendant FACILITY. Decedent SIGALA was of fragile
6  health. She was, thus, dependent of Defendant's care staff for all her activities of daily
7  living including assistance in dressing, grooming, bathing, toileting, medication
8  management and feeding.

9      50.    Each resident of Defendants' FACILITY is an elder and/or
10 dependent adult as defined by Welfare & Institutions Code §§ 15610.23 and 15610.27,
11 respectively. Defendants knew or should have known that their conduct, as described
12 herein, was directed to one or more elder and/or dependent adults. Because of his age,
13 condition, restricted mobility, and disability, Decedent SIGALA was substantially more
14 vulnerable to the conduct of Defendants than other members of the public.

15     51.    Defendants had a duty to Decedent SIGALA to provide access to
16 care and treatment to prevent the development of wounds, infection/syndrome, pain,
17 malnutrition, and dehydration; to ensure medical care that was needed was actually
18 provided; and to accept and retain only those residents for whom it could provide
19 adequate care, supervision, and assistance. Because Defendant FACILITY accepted
20 and retained Decedent SIGALA as a resident, they owed a duty to Decedent SIGALA
21 to act reasonably in the discharge of their duties and to not willfully or recklessly ignore
22 Decedent SIGALA'S medical care needs or cause unnecessary suffering. Without
23 limiting the foregoing, Defendants owed the following duties to Decedent SIGALA:

24     a.    Duty to identify individualized care needs based on assessment of
25         patient's needs with input from patient and, if necessary, health
26         professionals involved in the care of the patient (Cal. Code Regs.,
27         tit. 22, § 72311(a)(1)(A)); 42 C.F.R. §§ 483.10(f), 483.20(b)(1); 42
28         U.S.C. § 1395i-3(b)(3));

11

**COMPLAINT**

b.   Duty to provide care as implemented by individualized written patient care plan indicating the care to be given, objectives to be accomplished, and the professional discipline responsible for each element of care (Cal. Code Regs., tit. 22, § 72311(a)(1)(B); 42 C.F.R. § 483.10(c));

c.   Duty to review, evaluate, and update patient care plans as necessary and more often if there is a change of the patient's condition (Cal. Code Regs., tit. 22, § 72311(a)(1)(C));

d.   Duty to provide care as implemented by the patient care plan according to the methods indicated (Cal. Code Regs., tit. 22, § 72311(a)(2); 42 U.S.C. § 1395i-3(b)(4));

e.   Duty to provide care pursuant to physician's orders in the administration of medication and/or treatment, to provide medication and treatment as prescribed, and prepare a record of the administration of medication and treatment (Cal. Code Regs., tit. 22, §§ 72313 (a)(1)-(2) and (c));

f.   Duty to record nurses' notes that are clear and legible, dated and signed, among other qualifications, including narratives or how a patient responds, eats, drinks, looks, feels, and reacts (Cal. Code Regs., tit. 22, § 72547(a)(5));

g.   Duty to provide the resident or responsible party with the opportunity to participate in an immediate and ongoing basis in the total plan of care including identification of medical, nursing, and psychosocial needs and the planning of related services (Cal. Code Regs., tit. 22, § 72527(a)(3); 42 C.F.R. § 483.10(c));

h.   Duty to provide care in such a manner and in such an environment by facility staff to be free from mental and physical abuse and neglect (Cal. Code Regs., tit. 22, § 72527(a)(10); 42 C.F.R. §

483.12);

i.    Duty to provide care in such a manner and in such an environment to prevent formation and progression of pressure ulcers including turning and repositioning; using pressure-reducing devices where indicated; provide care to maintain clean, dry skin free of feces and urine; and carry out physician orders for treatment of ulcers (Cal. Code Regs., tit. 22, § 72315(f); Health & Saf. Code, § 1599.1(b));

j.    Duty to provide adequate personal hygiene, nutrition, and fluids to prevent malnutrition, dehydration, and promote wound healing (Cal. Code of Regs., tit. 22, §§ 72315(d)(g)(h); Health & Saf. Code, § 1599.1(b));

k.    Duty to provide adequate number of qualified personnel to carry out all functions of the facility and to meet patients' needs as well as adequate training and competent supervision (Cal. Code of Regs., tit. 22, §§ 72329 and 72329.1; Health & Saf. Code, § 1599.1(a); 42 C.F.R. §§ 483.35, 483.95).

l.    Duty to treat residents with consideration, respect, and full recognition of dignity (Cal. Code Regs., tit. 22, § 72527(a)(12)); and,

m.    Duty to notify physician of any change of condition and to note all attempts to notify physician in patient's health record (Cal. Code Regs., tit. 22, § 72311(a)(3) and (b))

52.    In addition, and without limiting the generality of the foregoing, Defendants owed the following duties to Decedent SIGALA and committed elder neglect by: failing to implement policies and procedures to ensure resident care needs are met; failing to provide training on the policies and procedures to ensure resident care needs are met; failing to ensure physician care is provided; failing to plan a budget whereby

13

1  staffing levels are adequate; failing to allocate sufficient resources to staff Defendant
2  FACILITY in both quantity and quality caregivers; and failing to comply with state and
3  federal laws and regulations pertaining to SNFs.

4      53.    Defendants conduct further constitutes neglect as that term is defined in
5  Welfare and Institutions Code § 15610.57 to include "the negligent failure of any person
6  having the care or custody of an elder or a dependent adult to exercise that degree of
7  care that a reasonable person in a like position would exercise, including but not limited
8  to:

9      a.  Failure to assist in personal hygiene, or in the provision of food,
10         clothing, or shelter.
11     b.  Failure to provide medical care for physical and mental health
12         needs;
13     c.  Failure to protect from health and safety hazards;
14     d.  Failure to prevent malnutrition or dehydration.

15     54.    Pursuant to California law, Defendants are required to provide an elder,
16  such as Decedent SIGALA, "basic services" including, a duty to continually assess
17  Decedent SIGALA'S condition, a duty to note changes in Decedent SIGALA'S condition,
18  and a duty to immediately notify Decedent SIGALA'S physician and family of changes.
19  Defendants similarly had a duty to create and update adequate plans of care, and to
20  receive, note, and follow physicians' orders. Defendants had a duty to treat Decedent
21  SIGALA with dignity and respect, and to provide adequate numbers of nursing and other
22  similar staff to assist her. Defendants had a duty to employ adequately trained staff. Yet
23  Defendants failed to provide medical care and custodial care sufficient to meet Decedent
24  SIGALA'S physical and mental health needs and failed to protect him from health and
25  safety hazards, as described in detail herein.

26     55.    Defendants, knew that Decedent SIGALA was an elder who required
27  assistance to meet her basic needs, yet failed to provide for those needs, even with
28  knowledge of Decedent SIGALA'S high risk for injury, his dependence on Defendants,

14

COMPLAINT

and the substantial certainty that Decedent SIGALA would be injured if these needs were not provided for. Defendants' failure to provide Decedent SIGALA with the care, assistance, and monitoring that she required caused her harm.

56.    Defendants denied and withheld basic care to Decedent SIGALA despite the knowledge that by doing so, injury was substantially certain to befall her or with conscious disregard of the high probability of such injury. Defendants' denial and withholding of basic care to Decedent SIGALA caused her injuries, needless suffering, and emotional distress. Furthermore, Defendants withheld medical care by failing to assess and reassess Decedent SIGALA'S condition, update individualized care plan(s), and monitor her condition to see whether she was improving, or worsening.

57.    Defendants failed to provide Decedent SIGALA with the care and treatment she needed, failed to ensure adequate nutritional and fluid intake, promote and maintain personal hygiene, and monitor and manage her pain levels. Defendants failed to monitor, assess, and reassess Decedent SIGALA'S deteriorating condition and to report her changes of condition to her physician and/or family to arrange for a higher level of care. Thus, there was repeated withholding of care when Defendants failed to implement care plans with adequate monitoring of her intake and output.

58.    Defendants failed to meet Decedent SIGALA'S need for care and basic services, to avoid needless suffering, injury, and emotional distress, by making a conscious choice to understaff the nursing home, in both quantity and quality of nursing personnel. The decision to understaff was made at the corporate level by Defendant OXNARD MANOR, LP dba OXNARD MANOR HEALTHCARE CENTER (THE LICENSEE) to increase the profitability of the nursing home, in conscious disregard of patient care needs. Defendants, together with its directors, officers, and managing agents including the Administrator, Director of Nursing, and Medical Director, conceived of and implemented a plan to increase business profits at the expense of residents like Decedent SIGALA and other Defendant FACILITY residents. Integral to this plan was the practice and pattern of Defendants' staffing its facilities with an

insufficient number of care personnel, many of whom were not properly trained nor qualified to care for the elders whose lives were entrusted to them. The understaffing and lack of training was designed to reduce labor costs and to increase profits and resulted in high staff turnover and the physical abuse and neglect of many residents of the facilities and most specifically, Decedent SIGALA. This corporate policy to not maintain sufficient staffing, as required by law, was developed and implemented with the conscious disregard for the likelihood of physical harm and injury to those who it is in the business to protect, including Decedent SIGALA, who did in fact suffer as a direct consequence of the Defendants' proprietary interests, which it placed above that of Decedent SIGALA, and other residents/patients.

59.    Defendants had a duty to employ adequate numbers of sufficiently staffed employees to provide minimum services and oversight of residents, policies and procedures to ensure that basic services and oversight are implemented to assure the health and safety of residents, employment and training of staff such that staff is experienced and competent to perform the job duties necessary to assure safety and oversight of residents, accepting, training, and employing staff in a manner that avoids "a revolving door" of crucial managerial employees such that there is little or no continuity and/or an absence of crucial managerial employees at critical times, such as the initial admission of a resident to the FACILITY.

60.    Defendants knew or should have known that by understaffing their facilities, in quantity and quality, they were putting Defendant FACILITY residents, including Decedent SIGALA, at risk for known, harmful, life threatening conditions, including dehydration and death. This is because Defendants, and each of them, including the owners, operators, administrators, and directors of nursing understand the direct relationship between staffing and patient outcomes. The higher the staffing ratio, the better the patient outcome.

61.    Defendants, and each of them, knew or should have known that Defendant FACILITY's operation was designed and operated in a manner to

circumvent its legal duty to comply with applicable statutes and regulations to maximize profitability. That knowledge was exclusively in the possession of the Defendants. Decedent SIGALA and her family had no such knowledge, nor the opportunity to obtain such knowledge and information. Decedent SIGALA and her family believed that Defendants' business operations were, as represented by the Defendants, properly run in compliance with the law and that the care afforded to its residents was within all State guidelines. They understood that the management and staff at Defendant FACILITY were "experts" and were readily familiar, capable, able, and committed to the care and oversight of residents such as Decedent SIGALA. Such representations were fraudulent.  Further, Defendants' conduct was reckless and in conscious disregard of Decedent SIGALA'S rights and safety.

62.      Defendants convinced Decedent SIGALA and her family they were able to meet her care needs. Defendants knew those promises and assurances were untrue. Defendants knew the Defendant FACILITY was rated poorly and was in fact a failing facility providing poor care when they made those statements.  Defendants knew the Defendant FACILITY was not properly staffed, was not providing proper care, and would not provide proper care to Decedent SIGALA. The purpose of their promises and assurances was to induce Decedent SIGALA to select Defendant FACILITY purely for financial gain. Their statements were false and were part of Defendants' business model of making fraudulent representations to elderly and dependent persons like Decedent SIGALA. This constitutes unfair business practices directed at the elderly.

63.      This continual pattern of withholding care and understaffing at Defendant's FACILITY was well known to the Defendants and their officers, directors, and managing agents, Administrator, Director of Nursing, and Medical Director. Upon information and belief, Defendant FACILITY'S Administrator, Director of Nursing, and Medical Director routinely reported up the chain of command to corporate managing agents about what was happening on the floor at the nursing home.  Upon information and belief, Defendant FACILITY'S Administrator, Director of Nursing, and Medical

Director also routinely reported admission, discharge and staffing data, and Defendants directed and controlled the staffing budget by allocating resources, setting staffing minimums and maximums, and directing staff to patient ratios. By law, Defendants were responsible for setting policies and procedures to be implemented in the Defendant FACILITY and provide supervision and oversight of administration and nursing services by and through managers and directors.

64.     These corporate managing agents had a duty to direct the nurses and staff yet did not make the necessary changes at Defendant FACILITY, even with knowledge of substandard care, failures to assess, monitor, and respond to changes in resident condition, inadequate custodial care, inadequate hygiene, and inadequate safety measures at the facility. The managing agents of each Defendant knew or should have known of the lack of proper custodial care to its patients, as well as its understaffing, poor training, and the failure to implement care plans based on internal reporting and also the oversight, monitoring, and reporting of the Department of Public Health.  Any and all findings of the Department of Public Health regarding care failures at Defendant FACILITY were reported up the corporate chain. Despite each Defendant's conscious knowledge of these conditions, the managing agents of each Defendant did not take appropriate and adequate steps to prevent and correct them, and they did not inform Decedent SIGALA or her family of what they knew about these dangerous conditions.

65.     Defendants, and their officers, directors and managing agents of the Defendants' FACILITY, including the Administrator, Director of Nursing, and Medical Director, knew or should have known that the Defendants' FACILITY'S operation was designed in a manner so as to maximize profitability by circumventing the legal duty to assure the health, safety, and oversight of residents such as Decedent SIGALA and, in particular, the duty to hire competent employees, to train those employees and to terminate or discipline employees for misconduct towards the residents, including Decedent SIGALA. As a result, Defendants' and their officers, directors, and managing

18

**COMPLAINT**

1  agents, including the Administrator, Director of Nursing, and Medical Director, had
2  knowledge of, ratified and/or otherwise authorized all of the acts or omissions, which
3  caused the injuries to Decedent SIGALA.

4          66.     LVNs are per se "unfit" to perform the functions of an RN, just as
5  an RN is per se "unfit" to perform the functions of a medical doctor. Here, Defendants
6  authorized and ratified the use of LVNs to perform assessments that they were not
7  licensed or qualified to perform. As a direct and proximate result of using unfit LVNs to
8  perform assessments, the LVN-based assessments and care plans done for Decedent
9  SIGALA were incomplete and inadequate and resulted in Decedent SIGALA not getting
10 the interventions she needed to prevent her becoming dehydrated, malnourished,
11 developing respiratory infection/syndrome, and dying.

12         67.     As a proximate result of the abuse and neglect of Decedent SIGALA
13 by Defendant LVNs, and each of them, Decedent SIGALA died on January 3, 2021.

14         68.     As a proximate result of the abuse and neglect of Decedent SIGALA
15 by Defendants and each of them, she was caused to incur medical expenses and other
16 related expenses, all to her special damages in a sum to be established.

17         69.     As a proximate result of the abuse and neglect of Decedent  SIGALA
18 by Defendants, and each of them, she suffered fear, anxiety, humiliation, physical pain
19 and discomfort, and emotional distress, all to her general damages in a sum to be
20 established.

21         70.     By the conduct, acts and omissions of Defendants, and each of them,
22 as alleged above, they are guilty of recklessness, fraud, oppression, and/or malice. The
23 specific facts set forth above show a disregard of the high probability that Decedent
24 SIGALA would be injured. In addition to special damages, Plaintiff is therefore entitled
25 to an award of the reasonable attorney's fees and costs incurred in prosecuting this
26 case as well as Decedent SIGALA'S pain and suffering and punitive damages pursuant
27 to Welfare & Institutions Code § 15657 and Civil Code § 3294.

28                          **SECOND CAUSE OF ACTION**

**COMPLAINT**

## VIOLATION OF PATIENT RIGHTS

### [Health & Safety Code § 1430(b)](Against Defendants:

### (Against All Defendants, OXNARD MANOR, LP et. al. and Does 1-25)

71.  Plaintiff incorporates by reference Paragraphs 1 through 70 of this Complaint as though fully set forth.

72.  The acts and omissions of Defendants alleged above constitute violations of patients' rights within the meaning of Health and Safety Code § 1430(b). This statute allows a current or former resident to pursue damages, attorney's fees, and an injunction for violations of patients' rights set forth in Title 22 of the California Code of Regulations § 72527 and other state and federal laws and regulations.

73.  Here, Defendants' conduct as described in the foregoing sections violated several of Decedent SIGALA'S statutory rights, including but not limited to:

a.  Right to be treated with consideration, respect, and full recognition of dignity (Cal. Code Regs., tit. 22, § 72527(a)(12));

b.  Right to have individualized individual care needs identified based on assessment of patient's needs with input from patient and, if necessary, health professionals involved in the care of the patient (Cal. Code Regs., tit. 22, § 72311(a)(1)(A)); 42 C.F.R. §§ 19483.10(f), 483.20(b)(1); 42 U.S.C. § 1395i-3(b)(3));

c.  Right to receive care as implemented by individualized written patient care plan indicating the care to be given, objectives to be accomplished, and the professional discipline responsible for each element of care (Cal. Code Regs., tit. 22, § 72311(a)(1)(B); 42 C.F.R. § 483.10(c));

d.  Right to have patient care plans reviewed, evaluated, and updated as necessary and more often if there is a change of the patient's condition (Cal. Code Regs., tit. 22, § 26    72311(a)(1)(C));

e.  Right to receive care as implemented by the patient care plan

20

**COMPLAINT**

according to the methods indicated (Cal. Code Regs., tit. 22, § 72311(a)(2); 42 U.S.C. § 1395i-3(b)(4));

f.  Right to receive care pursuant to physician's orders in the administration of medication and/or treatment, to have medication and treatment as prescribed, and for a record of the administration of medication and treatment prepared (Cal. Code of Regs., tit. 22, §§ 72313 (a)(1)-(2) and (c));

g.  Right to have a record of nurses' notes that are clear and legible, dated and signed, among other qualifications, including narratives or how a patient responds, eats, drinks, looks, feels, and reacts (Cal. Code Regs., tit. 22, § 72547(a)(5));

h.  Right for the resident or responsible party to have the opportunity to participate in an immediate and ongoing basis in the total plan of care including identification of medical, nursing, and psychosocial needs and the planning of related services (Cal. Code Regs., tit. 11 22,§ 72527(a)(3); 42 C.F.R. § 483.10(c));

i.  Right to have physician notified of any change of condition and to have all attempts to notify physician noted in patient's health record (Cal. Code Regs., tit. 22, § 72311(a)(3) and (b));

j.  Right to receive pharmaceutical and physical therapy services for effective pain management (Cal. Code Regs., tit. 22, §§ 72355, 72403(b)(3));

k.  Right to receive care in such a manner and in such an environment by facility staff to befree from mental and physical abuse and neglect (Cal. Code Regs., tit. 22, § 72527(a)(10); 42 C.F.R. § 483.12);

l.  Duty to provide adequate number of qualified personnel to carry out all functions of the facility and to meet patients' needs as well as adequate training and competent supervision (Cal. Code of Regs., tit.

**COMPLAINT**

22, §§ 72329 and 72329.1; Health & Saf. Code, § 1599.1(a); 42 C.F.R. §§ 483.35, 483.95).

74.   Defendants violated the above-referenced patient's rights when they failed to provide appropriate services to prevent serious injury to Decedent SIGALA.

75.   Plaintiff is entitled to attorney's fees and costs, in addition to other remedies set forth in Health and Safety Code §1430(b).

## THIRD CAUSE OF ACTION

### NEGLIGENCE

**(Against All Defendants, OXNARD MANOR, LP et. al. and Does 1-25)**

76.   Plaintiff incorporates by reference Paragraphs 1 through 75 of this Complaint as though fully set forth.

77.   At all times herein mentioned, Defendants had a duty to exercise reasonable and ordinary care in providing custodial care services to Decedent SIGALA and/or in providing health care services to Decedent SIGALA.

78.   At the above-mentioned times and place, Defendants, by their respective acts or omissions, were careless and breached their respective aforementioned duty owed to Decedent SIGALA by: negligently and carelessly failing to exercise reasonable and ordinary care to provide custodial care services to Decedent SIGALA; negligently and carelessly failing to exercise reasonable and ordinary care to provide health care services to Decedent SIGALA; negligently and carelessly failing to adequately supervise and/or monitor Decedent SIGALA; negligently and carelessly failing to hire, train and supervise; negligently and carelessly failing to exercise reasonable and ordinary care to provide custodial care services to Decedent SIGALA; negligently and carelessly failing to be adequately staffed to appropriately care for and treat Decedent SIGALA; negligently and carelessly failing to implement appropriate measure and interventions to ensure that Defendant FACILITY, as a SNF, was adequately staffed to appropriately care for and treat Decedent SIGALA; negligently and carelessly failing to take appropriate measures to prevent injury to Decedent SIGALA; negligently and

1  carelessly failing to adequately assess the care needs of Decedent SIGALA; negligently
2  and carelessly failing to adequately implement appropriate interventions to address the
3  care needs of Decedent SIGALA; negligently and carelessly failing to have appropriate
4  policies and procedures in place and for failing to follow appropriate policies and
5  procedures; and/or negligently and carelessly failing to otherwise care for and treat
6  Decedent SIGALA consistent with the standard of care, which upon information and
7  belief, will be disclosed through discovery in the course of this litigation.

8      79.    As a direct and proximate result of these tortious acts, omissions, and/or
9  conduct of Defendants, Plaintiff was damaged, injured, and harmed, all of which have
10  caused Decedent SIGALA great mental, physical and emotional distress, pain and
11  suffering, all to Plaintiffs' damage in a sum to be determined according to proof at the
12  time of trial.

13

14                          **FOURTH CAUSE OF ACTION**
15                              **WRONGFUL DEATH**
16           [Health & Safety Code § 1430(b)](Against Defendants:
17        (Against All Defendants  OXNARD MANOR, LP et. al. and Does 1-25)

18      80.    Plaintiff incorporates by reference Paragraphs 1 through 79 of this
19  Complaint as though fully set forth.

20      81.    Plaintiff ANTHONHY SIGALA, is the surviving heir and natural son of
21  Decedent SIGALA.

22      82.    As a proximate result of the conduct alleged above, perpetrated by
23  Defendants, Decedent SIGALA died on January 3, 2021.

24      83.    Prior to the death of Decedent SIGALA Plaintiff ANTHONY SIGALA
25  enjoyed the love, society, comfort, and attention of his mother.

26      84.    As a proximate result of the wrongful act of Defendants, as alleged
27  herein, which caused the death of Decedent SIGALA, Plaintiff, ANTHONY SIGALA,
28  sustained pecuniary loss of the love, comfort, companionship, solace, society, training,

**COMPLAINT**

guidance, and attention of Decedent SIGALA, in a sum according to proof at trial.

## RELIEF REQUESTED / PRAYER

1. On the First Cause of Action:

   a. For compensatory damages in an amount in excess of the minimum jurisdiction of this court to be ascertained at the time of trial; and

   b. For special damages including past hospital, medical, professional, and incidental expenses, according to proof; and

   c. For interest on any compensatory damages;

   d. For attorney's fees and costs pursuant to Welfare & Institutions Code § 15657 and according to proof; and

   e. For punitive and/or exemplary damages pursuant to Welfare & Institutions Code § 15657 and Civil Code § 3294; and

   f. For treble damages pursuant to Civil Code § 3345;

2. On the Second Cause of Action:

   a. For statutory damages according to proof pursuant to Health & Safety Code section 1430(b); and

   b. For attorney's fees and costs pursuant to Health & Safety Code section 1430(b);

3. On the Third and Fourth Causes of Action:

   a. For compensatory damages in an amount in excess of the minimum jurisdiction of this court to be ascertained at the time of trial; and

   b. For special damages including funeral and burial expenses, medical and incidental expenses according to proof; and

   c. For interest on any compensatory damages;

4. On all counts

   a. For costs of suit; and

   b. Whatever further relief the court may find just and proper.

24

COMPLAINT

1    DATED: December 29, 2021          THE BARNES FIRM, LC

2

3

4                                     By: _____

5                                         Christian R. Oliver
                                          Attorneys for Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25

**COMPLAINT**

1

2                                **DEMAND FOR JURY TRIAL**

3

4   Plaintiff hereby demands a trial by jury.

5

6   DATED: December 29, 2021        **THE BARNES FIRM, LC**

7

8

9                                   By:

10                                      Christian R. Oliver
                                        Attorneys for Plaintiffs
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        26
                                 **COMPLAINT**