**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA SIGALA, deceased, by and through her personal legal representative and successor in interest, Anthony Sigala; Anthony Sigala, individually,<br><br>                         Plaintiffs,<br><br>    v.<br><br><br>OXNARD MANOR, LP, et al.,<br><br>                    Defendants. | Case No.:  2:22-cv-02003-MEMF(MARx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND [ECF NOS. 13, 15, 16] AND DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS [ECF NOS. 12, 14, 17]** |

Before the Court are the following motions: (1) the Motion to Remand (ECF No. 13) filed by Plaintiff Anthony Sigala, individually, and as successor in interest of Anna Sigala; and (2) the Motion to Dismiss (ECF No. 12) filed by Defendants Oxnard Manor, LP, doing business as Oxnard Manor Healthcare Center, Bertie Krieger, Shlomo Rechnitz, Oxnard Healthcare and Wellness Centre, LP, and Does 1 to 100. For the reasons stated herein, the Court GRANTS the Motion to Remand. On May 23, 2022, the Court deemed this matter appropriate for resolution without oral argument and vacated the hearing set for May 26, 2022. *See* ECF No. 19; C.D. Cal. L.R. 7-15. Accordingly, the Motion to Dismiss is DENIED as MOOT.

1

**I.     Factual Background[1]**

2
       Anthony Sigala's elderly mother, Anna Sigala, was a resident of Oxnard Manor Nursing

3
Home ("Oxnard" or the "Facility"), a California licensed nursing facility. She died on January 3,

4
2021 from COVID-19. ("Compl." or "Complaint"), ECF No. 1, Ex. A ¶¶ 1, 44–45. Her death was the

5
result of Oxnard's negligent, willful and/or reckless conduct in the care rendered to Anna Sigala

6
specifically in the context of the COVID-19 pandemic. Notice of Removal ("Notice"), ECF No. 1 ¶

7
4.

8
**II.     Procedural Background**

9
       On December 29, 2021, Anthony Sigala filed this action against Defendants Oxnard Manor,

10
LP, doing business as Oxnard Manor Healthcare Center, Bertie Krieger, Shlomo Rechnitz, Oxnard

11
Healthcare and Wellness Centre, LP, and Does 1 to 100 (collectively, the "Oxnard Manor

12
Defendants") in Ventura County Superior Court on behalf of himself and as successor in interest to

13
Anna Sigala (collectively, the "Sigalas") alleging the following state-law claims: (1) elder abuse and

14
neglect, CAL. WELF. & INST. CODE § 15600, *et seq.*; (2) violation of patient rights, CAL. HEALTH &

15
SAFETY CODE § 1430(b); (3) negligence/willful misconduct under California state law; and (4)

16
wrongful death under California state law. *See* Notice of Removal ("Notice"), ECF No. 1 ¶ 1;

17
Compl. ¶¶ 46–84; Remand Mot. at 7. Sigala seeks to recover general, special, punitive, and

18
exemplary damages as well as attorneys' fees and interest, and costs of suit. Compl. ¶ 24.

19
       On March 25, 2022, the Oxnard Manor Defendants removed this action to this Court

20
pursuant to 28 U.S.C. § 1442. *See generally* Notice. In their Notice of Removal, the Oxnard Manor

21
Defendants assert that the Court has jurisdiction over this action under 28 U.S.C. § 1331 on three

22
grounds: federal officer jurisdiction, complete preemption of state law, and the presence of an

23
embedded federal question. *See generally* Notice ¶¶ 9–53.

24

25

26

27

---

28
[1] Unless otherwise indicated, the following facts are derived from the Complaint. ("Complaint" or "Compl.")
ECF No. 1, Ex. A.

On April 1, 2022, the Oxnard Manor Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 12. This motion was fully briefed as of May 12, 2022. ECF Nos. 14 ("MTD Opp'n"), 17 ("MTD Reply").

On April 22, 2022, Sigala filed a Motion to Remand. ("Remand Mot."), ECF No. 13. The Motion was fully briefed as of May 12, 2022. *See* ECF Nos. 15 ("Remand Opp'n"), 16 ("Remand Reply").

**MOTION TO REMAND**

**I.   Legal Standard**

The "[f]ederal courts are courts of limited jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (internal quotation marks omitted). Civil actions may be removed from state court if the federal court has original jurisdiction. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) ("Under the plain terms of § 1441(a), in order properly to remove [an] action pursuant to that provision, [the party seeking removal] must demonstrate that . . . original subject-matter jurisdiction must lie in the federal courts."). Courts resolve all ambiguities "in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

Removal of a state action may be based on either diversity or federal question jurisdiction. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction. *Geographic Expeditions, Inc. v. Est. of Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010).

To determine whether an action involves a federal question, "a [district] court applies the well-pleaded complaint rule." *Moore-Thomas v. Ala. Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009) (internal citations and quotations omitted). This rule provides that federal jurisdiction *only exists* when a "federal question is presented on the fact of the plaintiff's properly pleaded complaint." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014) (internal quotations omitted). As a result, a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated

1   in the plaintiff's complaint, and even if both parties concede that the federal defense is the only

2   question truly at issue.'" *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

3   Therefore, a "plaintiff can generally 'avoid federal jurisdiction by exclusive reliance on state law.'"

4   *City of Oakland v. BP PLC*, 969 F.3d 895, 904 (9th Cir. 2020) (quoting *Caterpillar*, 482 U.S. at

5   392).

6       **II.   <u>Discussion</u>**

7       The Oxnard Manor Defendants assert three grounds for removal: (1) federal officer

8   jurisdiction, (2) complete preemption of state law, and (3) the presence of an embedded federal

9   question. *See generally* Notice ¶¶ 9–53. Sigala seeks to remand for lack of subject matter

10  jurisdiction. Remand Mot. at 1.

11      **A.  *Saldana* Controls the Question Presented by Sigala's Motion to Remand**

12      This case presents nearly identical issues as *Saldana v. Glenhaven Healthcare, LLC*, a recent

13  Ninth Circuit case analyzing whether the PREP Act qualifies as a complete preemption statute. 27

14  F.4th 679 (9th Cir. 2022). The *Saldana* facts are strikingly similar to those presented here: relatives

15  of a deceased resident of a skilled nursing facility sued the facility in California state court for elder

16  abuse, willful misconduct, custodial negligence, and wrongful death. *Id.* at 683. The facility removed

17  the case to federal court arguing that the district court had three grounds for federal jurisdiction:

18  federal officer removal, complete preemption of state law, and the presence of an embedded federal

19  question. *Id.* Upon review of the PREP Act, the Ninth Circuit held that as the Act is not a complete

20  preemption statute, the facility was not entitled to removal. *See id.* at 683–89.

21      Indeed, several post-*Saldana* Ninth Circuit district court cases have similarly held that the

22  PREP Act is not a complete preemption statute. *See, e.g.*, *Branch v. Lilac Holdings, LLC*, No. 21-cv-

23  00605-BAS-MDD, 2022 WL 1184358 (S.D. Cal. Apr. 21, 2022); *Aguilera-Cubitt v. AG Seal Beach,*

24  *LLC*, No. SACV 22-249 JVS, 2022 WL 1171028 (C.D. Cal. Apr. 20, 2022); *Kovacs v. MEK*

25  *Norwood Pines, LLC*, No. 2:22-cv-00120 WBS AC, 2022 WL 1129269 (E.D. Cal. Apr. 15, 2022).[2]

26  _____

27  [2] Additionally, of twenty-five Ninth Circuit district court opinions analyzing the complete preemptive power
    of the PREP Act, twenty-four have similarly held that the PREP Act does not completely preempt state law

28

4

1   The Oxnard Manor Defendants argue that *Saldana* is not binding on this Court because the

2   Oxnard Manor Defendants have "the understanding that [the] defendant in *Saldana* intends to file a

3   petition for writ of certiorari." Remand Opp'n at 11 n.4; *id.* at 19 n.11. This argument is unavailing.

4   The Ninth Circuit has "unequivocally stated that a published decision constitutes binding authority

5   and must be followed unless and until it is overruled by a body competent to do so." *In re Zermeno-*

6   *Gomez*, 868 F.3d 1048, 1053 (9th Cir. 2017). It is well-established that "once a federal circuit court

7   issues a decision, the district courts within that circuit *are bound to follow it* and have no authority to

8   await a ruling by the Supreme Court before applying the circuit court's decision as binding

9   authority." *Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) (emphasis added). For the Court to

10  do otherwise would be "clear error." *In re Zermeno-Gomez*, 868 F.3d at 1053.

11  **B.  The Oxnard Manor Defendants Do Not Qualify for Federal Officer Jurisdiction**

12  The Oxnard Manor Defendants argue that as the Facility took "steps to prevent the spread of

13  COVID-19" and did so "in compliance" with directives from federal agencies, this case is also

14  removable under federal officer jurisdiction, 28 U.S.C. §1442(a)(1). Notice ¶¶ 44–53; Remand

15  Opp'n at 15. Sigala counters by arguing that the Oxnard Manor Defendants have failed to meet the

16  burden of proving the basis for jurisdiction as it does "not draw a connection" between their actions

17  and "the explicit directions of any federal officer's direct orders or comprehensive and detailed

18  regulations" as is required by the statute. Remand Mot. at 18 (internal quotations omitted).

19  Federal officer jurisdiction, also known as federal officer removal, is governed by 28 U.S.C.

20  § 1442(a)(1). The statute provides that an action commenced in state court may be removed to

21  federal court when it is "against or directed to . . . [t]he United States or any agency thereof or any

22  officer (or any person acting under that officer) of the United States or of any agency thereof, in an

23  official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. §

24

25  claims. *See* Remand Mot. 3–4 (collecting cases). The Oxnard Defendants urge the Court to rely on the lone
26  outlier, *Garcia v. Welltower OpCo Grp.*, a district court case that predates *Saldana*. 522 F.Supp.3d 734 (C.D.
    Cal. 2021), *abrogation recognized* No. 2:22-cv-00179-SVW-PLA, 2022 WL 845349 (C.D. Cal. Mar. 22,
27  2022). However, as discussed herein, *Saldana* clearly abrogates *Garcia*. Accordingly, the Court finds no
    reason to depart from the controlling authority and does not consider *Garcia* in its analysis.

28

1442(a)(1). The statute's purpose is to "protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Government acting within the scope of their authority." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 150 (2007) (citations and internal quotation marks omitted). And while the statute is to be "liberally construed," the statute's "language, context, history, and purposes" may create limits in its application. *Id.* at 147.

To remove a case to federal court under this statute, the defendant bears the burden of meeting the following three-part test: "(a) [that the removing party] is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018). To establish a "causal nexus," the Oxnard Manor Defendants must establish that it was "acting under" the direction of a federal officer and that those actions are "causally connected" to Sigala's claims. *See Cnty of San Mateo v. Chevron Corp.*, 960 F.3d 586, 598 (9th Cir. 2020), *vacated on other grounds*, 141 S.Ct. 2666 (2021).

The parties do not appear to dispute that the Oxnard Manor Defendants qualify as a person under the meaning of the statute. Instead, the bulk of their disagreement rests on whether the Facility was acting "under the direction of a federal officer." *See* Remand Mot. at 17–18; Remand Opp'n at 14–20; Remand Reply at 9–10.

*Watson* is the controlling case. 551 U.S. 142. There, the Supreme Court held that

> [A] highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And it is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statue considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries.

*Id.* at 153.

The Oxnard Manor Defendants argue that *Watson*'s restrictions do not apply here because *Watson* requires that a private firm, at a minimum "involve an effort to assist, or to help carry out,

1    the duties or tasks of the federal superior." Remand Opp'n at 18 (citing *id.* at 151). Again, the

2    Oxnard Manor Defendants point to the "explicit guidance" and "high level of control" exercised by

3    the Centers for Medicare and Medicaid Services ("CMS"), the Center for Disease Control ("CDC"),

4    and the California Department of Public Health through directives and other instructions. *Id.* at 16–

5    18. The Oxnard Manor Defendants further contend that they were acting under the direction of a

6    federal officer because the federal government designated skilled nursing facilities like Oxnard as

7    "critical infrastructure" during the pandemic. *Id.* at 16. These decisions include: ordering facilities to

8    restrict visitation, canceling communal dining, implementing active screening of staff for fever and

9    respiratory symptoms, limiting access points, amending policies regarding interactions with vendors,

10   and amending procedures around end-of-life interactions with family members. *Id.* The Oxnard

11   Manor Defendants argue that, taken together, these "detailed clinical directives and instructions"

12   indicate that the federal government enlisted the Oxnard Manor Defendants "to carry out the duty of

13   the government" within the meaning of the statue. *Id.* This, they argue, is sufficient to meet *Watson*'s

14   minimum requirement of an "effort to assist, or to help carry out, the duties or tasks of the federal

15   superior." *Id.* at 18 (citing *Watson*, 551 U.S. at 151).

16        However, this argument is unavailing. The Oxnard Manor Defendants concede that the bulk

17   of authority from Ninth Circuit district courts and the Ninth Circuit itself indicate that federal officer

18   removal is improper on these facts. *Id.* at 19. But the Oxnard Manor Defendants urge the Court to

19   look to out of circuit authority, arguing that none of the Ninth Circuit cases, *Saldana* included, are

20   binding on this Court. *Id.* As discussed above, *Saldana* is indeed binding.

21        Thus, applying *Saldana*'s analysis of *Watson*, the Court finds the presented evidence

22   insufficient. Just as the Ninth Circuit concluded in *Saldana*, "[a]ll that [defendant] has demonstrated

23   is that it operated as a private entity subject to government regulations, and that during the COVID-

24   19 pandemic it received additional regulations and recommendations from federal agencies. Thus,

25   [defendant] was not 'acting under' a federal officer or agency as contemplated by the federal officer

26   removal statute." *Saldana*, 27 F.4th at 686; *see also id.* at 684 ("[S]imply *complying* with a law or

27   regulation is not enough to bring a private person within the scope of the statute." (internal

28   quotations omitted)).

As the Oxnard Manor Defendants have not met their burden to establish the "nexus," the Court does not analyze the remaining elements of the federal officer removal statute. Accordingly, federal officer removal is improper.

## C. The PREP Act Does Not Confer Complete Preemption

Sigala argues that none of his claims implicate federal law or "arise under federal law, because they raise no dispute or controversy regarding the validity, construction or effect of any federal law." Remand Mot. at 7–8. The Oxnard Manor Defendants, on the other hand, argue that removal is proper because Sigala's claims are completely preempted by the Public Readiness and Emergency Preparedness ("PREP") Act, 42 U.S.C. §§ 247d-6d, 257d-6e. *See* Notice ¶¶ 13–43; Remand Opp'n at 6–14.

Complete preemption is an "independent corollary to the well-pleaded complaint rule known as the complete pre-emption doctrine." *Retail Prop.*, 768 F.3d at 947 (internal quotation marks omitted) (quoting *Caterpillar*, 482 U.S. at 393). The doctrine "posits that there are some federal statutes that have such 'extraordinary pre-emptive power' that they 'convert[ ] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "'When a plaintiff raises such a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore arising under federal law.'" *Id.* (quoting *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005)). Like the well-pleaded complaint rule, complete preemption is "applicable to removal jurisdiction only; it is not a doctrine of defensive preemption." *Id.*

The complete preemption doctrine, however, rarely applies. It only arises in "extraordinary situations" where Congress has "manifested an intent to convert state-law claims into federal-question claims." *Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 668 (9th Cir.1993) (citations omitted). To date, the Supreme Court has only identified three sufficiently "extraordinary" statutes: (1) Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185; (2) Section 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a); and (3) Sections 85 and 86

of the National Bank Act, 12 U.S.C. §§ 85, 86. *City of Oakland*, 969 F.3d at 905–06. Accordingly, the Ninth Circuit applies a two-step test to determine whether complete preemption "for the purposes of federal jurisdiction under [section] 1331 exists": (1) "when Congress intended to displace a state-law cause of action;" and (2) "provided a substitute cause of action" (the "*City of Oakland* Test"). *Id.* at 905 (citing *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018)).

       i.    <u>The PREP Act</u>

Before the Court can determine whether complete preemption applies in this case, a brief summary of the PREP Act is necessary. Passed in 2005, the Public Readiness and Emergency Preparedness Act (the "PREP Act" or "Act"), states that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). "Covered persons" is defined, in part, as "a program planner or qualified person with respect to the administration or use of [a] covered countermeasure." 42 U.S.C. § 247d-6d(i)(2). "Covered countermeasures" include "qualified pandemic or epidemic product," drugs, biological products, or devices. *Id.* §§ 247d-6d(i)(1)(A)–(D).

There is, however, an exception to the Act's immunity. Section 247d-6(d)(1) provides that there is an "exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct" of a covered person." *Id.* § 247d-6(d)(1). Such an action may only be "filed and maintained . . . in the United States District Court for the District of Columbia." *Id.*

The Act is invoked when the Secretary of Health and Human Services "makes a determination that a disease or other health condition or other threat to health constitutes a public health emergency, or that there is a credible risk that the disease, condition, or threat may in the future constitute such an emergency." *Id.* § 247d-6d(b)(1). "The Secretary controls the scope of immunity through the declaration and amendments, within the confines of the PREP Act." Saldana, 27 F.4th at 687 (citing *Maglioli v. All. HC Holdings, LLC*, 16 F.4th 393, 401 (3d Cir. 2021)). Further, the Act includes a Covered Countermeasure Process Fund which exists to compensate

"eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration." *Id.* § 247d-6e(a).

Where applicable, the PREP Act preempts state laws that create different standards regarding covered countermeasures. States and localities may not create or enforce legal requirements that deviate from the Act's provisions or relate to the use or administration of any of the covered countermeasures. 42 U.S.C. § 247d-6d(b)(8).

On March 17, 2020, the Secretary issued a declaration for the current COVID-19 pandemic. *See generally* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 issued March 17, 2020 ("March 17, 2020 Declaration"), ECF No. 13-1, Ex. 2. The March 17, 2020 Declaration "provided immunity for covered persons for the use of covered measures, including 'any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19." *Saldana*, 27 F.4th at 687. Several amendments have been issued since. *See generally* Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the March 20, 2020 Declaration Under the Act ("March 10, 2020 Advisory Opinion"), ECF No. 13-5, Ex. 3.

       ii.    The Plain Meaning of the PREP Act Does Not Imply Preemption

Here, Sigala argues that the plain meaning of the Act precludes preemption as the "language of the Act denotes action taken, while the Plaintiffs' Complaint pleads Defendants' inaction (*i.e.*, failure to sequester either infected employees or residents away from uninfected residents, failure to protect residents.)." Remand Mot. at 9. The Oxnard Manor Defendants provide a different interpretation of the Act's plain language contending that, when taken together with the Secretary's Declarations and Advisory Opinions, it supports "a finding that the PREP Act completely preempts Plaintiffs' claims." Remand Opp'n at 12–13.

In *Saldana*, the Ninth Circuit held that the PREP Act failed to satisfy the *City of Oakland* Test. 27 F.4th at 687–88. Under the first prong, looking to the text of the statute, the Ninth Circuit held that Congress only intended a federal claim "for willful misconduct and not claims for negligence and recklessness." *Id.* at 688 (citing 42 U.S.C. § 247d-6d(c)(1)). Under the second prong, the Ninth Circuit found that administrative compensation provided by the Covered Compensation

1    fund does not qualify as a substitute cause of action. *Id.* As such, the Ninth Circuit held that under

2    *City of Oakland*, "the PREP Act is not a complete preemption statute." *Id.*

3        Moreover, the advisory opinions that the Oxnard Manor Defendants highlight to support their

4    argument that the PREP Act is a complete preemption statute do not support the defendants'

5    position. The Oxnard Manor Defendants direct the Court to the Department of Health and Human

6    Services' ("HHS") Advisory Opinion 21-01 ("AO 21-01"), which states that the PREP Act is a

7    complete preemption statute. Remand Opp'n at 20. However, the Ninth Circuit treats complete

8    preemption as a "jurisdictional rather than a preemption doctrine." *Dennis v. Hart*, 724 F.3d 1249,

9    1254 (9th Cir. 2013). Accordingly, the Court's analysis does not consider questions of preemption.

10   Moreover, an agency's opinion on federal court jurisdiction is not entitled to *Chevron* deference. *See*

11   *Saldana*, 27 F.4th at 687 (citing *Dandino, Inc. v. U.S. Dep't of Transp.*, 729 F.3d 917, 920 n.1 (9th

12   Cir. 2013)). Thus, AO 21-01 and similar advisory opinions are not controlling on this question.

13        iii.    Preemption of a Single Cause of Action Is Not Sufficient to Preempt All of Sigala's
                State Law Claims.

14        The Oxnard Manor Defendants further argue that because the Act explicitly preempts willful

15   misconduct claims, the Court should find that the entirety of Sigala's claims are preempted. Remand

16   Opp'n at 10. But as "finding that one claim *may* be preempted is different than finding that the

17   'federal statutory scheme is so comprehensive that is *entirely supplants* state law causes of action,'"

18   this argument also fails. *Saldana*, 27 F.4th at 688 (citing *Retail Prop. Tri.*, 768 F.3d at 947).

19        Accordingly, the Court holds that the PREP Act does not completely preempt Sigala's state

20   law claims.

21   **D. As Sigala's Claims Do Not Contain Embedded Federal Issues, the *Grable* Doctrine Does
        Not Confer Federal Jurisdiction**

22        The Oxnard Manor Defendants further argue that federal question jurisdiction exists because

23   various elements of the PREP Act are embedded in Sigala's state-law claims. Remand Opp'n at 21.

24   Sigala argues that because he only plead four state-law claims, his claims "raise no dispute or

25   controversy regarding the validity, construction or effect of any federal law." Remand Reply at 8.

26        The Oxnard Manor Defendants invoke *Grable & Sons Metal Prods. v. Darue Eng'g. &*

27   *Mf'g.*, where the Supreme Court held that "in certain cases federal-question jurisdiction will lie over

28

state-law claims that implicate significant federal issues." 545 U.S. 308, 312 (2005); Notice at 10–11; Remand Opp'n at 20–21.

*Grable* is interpreted in accordance with the "well pleaded complaint rule." *See Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011) ("[A] state-law claim will present a justiciable federal question only if it satisfies *both* the well-pleaded complaint rule *and* passes the 'implicate[s] significant federal issues' test.") (quoting *Grable*, 545 U.S. at 312). *Grable* applies "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

The Oxnard Manor Defendants argue that *Grable* applies for two reasons. First, they contend that the PREP Act

> (1) creates an exclusive federal cause of action for injuries caused by willful misconduct; (2) establishes a compensation fund for injures directly caused by the administration or use of covered countermeasures; (3) provides broad immunity for loss relating to the administration or use of covered countermeasures; and (4) preempts state laws that create different standards regarding [the] covered PREP Act must be read together and not in isolation in deciding whether there are substantial embedded federal issues.

Remand Opp'n at 21. Second, the Oxnard Manor Defendants argue that HHS declarations and advisory opinions issued by the Office of General Counsel, including AO-21-01, explicitly invoke *Grable* and confirm that PREP Act requires that Sigala's claims must be brought in federal court. *See id.* at 21.

Both arguments fail. First, as provided by the well-pleaded complaint rule, *Grable* only applies to claims specifically alleged by the plaintiff, not to federal issues raised as a defense. *See Cal. Shock*, 636 F.3d at 542. Here, as already stated, the Oxnard Manor Defendants raise the PREP Act as a defense. Sigala only alleges state law claims which are not preempted by the PREP Act.[3]

---

[3] The Oxnard Defendants point to the fact that the PREP Act preempts Sigala's willful misconduct claim as evidence that Sigala placed his claims "squarely and exclusively in the United States District Court for the District of Columbia." Opp'n at 21. However, as previously discussed, preemption of one claim is not

Second, as previously discussed, the Ninth Circuit has held that agency opinions "on federal court jurisdiction [are] not entitled to *Chevron* deference." *Saldana*, 24 F.4th at 688 (citing *Dandina*, 729 F.3d at 920 n.1) (specifically discussing AO-21-01's lack of persuasive value).

Accordingly, the Court finds that Sigala's claims do not raise an embedded federal question.

## CONCLUSION

For the foregoing reasons, Sigala's Motion to Remand is GRANTED. Accordingly, the Oxnard Manor Defendants' Motion to Dismiss is DENIED as MOOT. This case is remanded to the California Superior Court for Ventura County.

**IT IS SO ORDERED.**

Dated: June  27, 2022

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

sufficient to preempt all claims. *See Saldana*, 27 F.4th at 688 (citing *Retail Prop. Tri.*, 768 F.3d at 947). Accordingly, this argument is unpersuasive.